Samuel F. Patterson v. Commissioner.
Patterson v. Commissioner
Docket No. 4307-65.
United States Tax Court
T.C. Memo 1968-132; 1968 Tax Ct. Memo LEXIS 160; 27 T.C.M. (CCH) 640; T.C.M. (RIA) 68132; June 27, 1968, Filed *160 Petitioner was an elementary school teacher in a Los Samuel F. Patterson, pro se, P.O. Box 11162, Kearny Station, Los Angeles, Calif. Joel A. Sharon and James Booher, for the respondent. HOYT
*161 Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined a deficiency in petitioner's income tax liability for 1963 in the amount of $510.97. The deficiency resulted from respondent's determination that petitioner was not entitled to most of 244 separate items claimed as deductions. The deductions taken by petitioner totaled $2,676.16; respondent disallowed $2,126.36 of that amount. Since the amount determined by respondent to be allowable, $549.80, was less than the standard deduction of $791.70, provided for by section 141, [1] respondent allowed the standard deduction, in lieu of the amount of itemized deductions allowed, in computing the deficiency. Findings of Fact Some of the facts have been stipulated. Those facts and the exhibits attached thereto are hereby incorporated by this reference and adopted as our findings. 641 Petitioner timely filed his individual income tax return for the taxable year 1963 with the district director of internal revenue at Los Angeles, California. At the time the petition was filed herein, petitioner resided in Los Angeles, California. Samuel *162 F. Patterson received a B.S. degree from the University of Southern California in 1953 and an M.A. from the University of California in 1956. In January 1960, he commenced a further course of graduate study at Boston University, which, if completed, would lead to a doctorate. A year later, in January of 1961, he received credentials from the California State Board of Education to teach in kindergarten or in primary grades 1, 2, and 3 or in an elementary school. He was also then given credentials as an elementary school administrator. During the year 1963, he was employed by the Los Angeles City Board of Education as an elementary school teacher of grades 3 and 4 at the Seventy-Ninth Street School. His gross income from that position for 1963 was $7,917, and he was not otherwise employed. The ages of his then students in his home-room class varied from 7 to 11. During 1963 petitioner voluntarily engaged in an experiment involving the students at the School from kindergarten through the sixth grade. With the permission of the school administrators, he equipped a special room in the school, at his own expense, and opened it to any student for brief times both before and after the normal *163 school day. The purpose of petitioner's activities was to provide the students with learning experiences on an experimental basis and in terms of an unusual educational method. The school was located in an area of Los Angeles known as the "Watts" area. Most of the children were from homes which did not supply either an atmosphere necessary to attain an attitude harmonious with the goals of education, or the material articles similarly needed by the student in his school work. Petitioner felt that many of the educational and cultural aids and materials which he supplied to the children, both in his own classroom and in his experimental room, were necessary in order to provide an enriched environment which was not found in the children's homes. Among the articles he claims were purchased for his special classroom or for use of the students were two television sets, an organ, many radios, a radio-phonograph, telescopes, binoculars, encyclopedias, dictionaries, magazines, tape recorders, a phonograph, various games, a miniature pool table, and others. He also financed birthday parties or other social events for his students, as well as personally contributing money from time to time, *164 to purchase articles necessary for the daily use or personal hygiene and health of his students such as pencils, pens, band aids, mouthwash, pills, sprays, et cetera. In order to administer his supplementary educational programs, he lived near the school, and obtained a key to his "experimental classroom." He visited the homes of his students and often engaged in community activities, being sometimes called upon to lend his professional experience to the solving of neighborhood problems. All of these activities involved the expenditure by petitioner of sums from his own pocket. In order to teach the course prescribed in the elementary school curriculum, petitioner furnished other tangible materials for the use of his students that were not provided for by the District in the school budget. This generally involved other out-of-pocket expenditures on his part. None of petitioner's activities, expenditures and purchases were suggested or required by the School, nor were they a condition for his employment. Similarly, they were not funded by the School, but rather entirely by petitioner. At the close of the school year, and we assume this was in May or June of 1964, the larger items *165 were stored at petitioner's residence; the smaller items remained at the School, had been given to the students, or had been consumed during the year. What disposition was eventually made of the equipment does not appear of record but no allegation is made that it was given to the School or to the School Board. Petitioner was also working towards a doctoral degree in education at Boston University. His particular course of study - public school superintendency - would lead to qualifying him to hold any position within the school system. Petitioner spent the summer vacation of 1963 in Boston working with his advisor and doing research towards this degree. However, he was not enrolled as a student at Boston University that summer. In his deduction schedule filed with his 1963 return, he claimed $200 as a payment to Boston University on an educational loan, $320 for transportation to and from Boston University, $137.04 for room rent at summer school, and other smaller items identified as being connected with Boston University. However, his deduction schedules for June, July and August also 642 continued to list a multitude of items identified as the type of expense claimed for his *166 extracurricular experimental school activity or for his personal use. He claimed totals of $852.25 for June, $230.38 for July, and $186.08 for August. Certain items in these monthly schedules are not explained or identified other than by the brief description set forth in the schedule itself. For example, in the June schedule $45 is claimed for "Mrs. Mallory - secretarial help"; in July $21.99 is claimed for "Binoculars (6 X 30)" and $9.89 for "alarm clock" and in August $78 for "Offset printing - proposal." Petitioner also expended his personal funds during 1963 on such items as contributions, medical expenses, toothpaste, deodorants, mouthwash, shoes, watch repair, an alarm clock, camera films and others which he included in the schedules filed with his 1963 income tax return and which he continues to urge are deductions. Respondent determined that $2,126.36 of the itemized deductions claimed in total amount of $2,676.16 were not allowable under any provision of the Code. Inasmuch as the standard deduction provided by section 141, $791.70, was greater than the amount respondent determined as having been established, that deduction was allowed by respondent in computing the deficiency *167 of $510.97. Opinion Of the 244 items of deductions claimed by petitioner in monthly schedules attached to the return in question, some were allowed by the respondent. Those which were not allowed are challenged both for substantiation of payment and deductibility under the Internal Revenue Code. At the outset we must note that petitioner's evidence, which consisted solely of his own testimony, was very vague and unconvincing. Not only did this testimony fail to establish the nature of the payments in most instances but it also, standing alone, is totally inadequate to substantiate the many items in question. In our consideration of the nature of the payments allegedly made and disallowed, we conclude that they may properly be divided for our analysis into four groups: (1) Expenditures in outfitting petitioner's experimental classroom; (2) contributions to or for the benefit of individual students; (3) expenses toward petitioner's graduate work at Boston University; and (4) personal expenses. We agree with respondent that none of the above-categorized expenditures can be deducted by petitioner under any section of the Internal Revenue Code even if we could conclude that petitioner *168 had sustained his burden of proving the expenditure itself. Petitioner attempts to justify the deductibility of all the expenses on the rationale that they were both ordinary and necessary to his professional life as a teacher and his goal of bringing a new educational experience to his otherwise culturally deprived students. He argues that the deductions were therefore ordinary and necessary business expenses. Petitioner argues that the low motivation and performance levels of the students reflected the need for the types of programs he instituted. He contends that the expenses incurred in outfitting his special classroom were necessary to bring a full-learning experience to the children. He further argues that the contributions to the welfare of individual students were necessary to elevate the cultural levels of these students. His doctoral program expenses were necessary, he urges, to qualify him to conduct such an unusual program. He concludes that the personal expenses incurred were necessary to place himself in the proper position to conduct the educational experience for the students. While we sympathize with petitioner's goals, believe that he was sincerely motivated and *169 feel his acts were indeed praiseworthly, we must hold that we are unable to allow the deduction of the expenses under any section of the Internal Revenue Code. Respondent's arguments must be sustained, and the petitioner's arguments rejected. The Commissioner's Regulations (section 1.162-1(a)) provide that business expenses qualify as a deduction from gross income when they are directly connected with or pertaining to the trade or business of the taxpayer. To qualify as ordinary and necessary business expenses, the expenditures must be directly or proximately connected with the trade or business of the taxpayer, and must be both ordinary and necessary under the circumstances. Petitioner undertook the special classroom project on his own; his employer in no way asked or required him to do so. We cannot say here that the first category of expenditures, outfitting of the special classroom, was directly connected with or to petitioner's employment as a schoolteacher. Nor were the expenses ordinary by any measure. 643 Commissioner v. Heininger, 320 U.S. 467 (1943); Robert Lee Henry, 36 T.C. 879 (1961); Alexander P. Reed, 35 T.C. 199 (1960). *170 Here in petitioner's own words "This was an exceptional type of experiment"; the expenditures were extraordinary. Also, it apparently has not occurred to petitioner that many of the larger expenditures for items such as radios, a chord organ, a radio phonograph, tape recorders, et cetera, were for items of a more or less permanent nature which were petitioner's property not the School's; they were apparently not given or donated to the School at all but were either given to individual students or removed by petitioner and taken to his home. The fact that petitioner may have used some of his personal property in connection with an extra-curricular school activity would not be any sort of valid basis for letting him deduct the cost as a business expense in the year of purchase. As to the second category of deductions, petitioner's contributions to the welfare of individual students, we must also affirm the respondent's refusal to allow the deductions. Section 170(c) defines a charitable contribution by designating specific groups of recipients. Individual beneficiaries are not to be found within the included groups. Private charity, while highly deserving and commendable, does not *171 qualify. Had Congress intended gifts such as those made by petitioner directly to students to be within the statute, it could easily have added the word "individuals" or "persons" to the statute. Petitioner's intentions and donations were generous and noteworthy, but the expenses represented benevolence of one individual to another and as such are not deductible. Fred Dohrmann, Jr., 18 B.T.A. 66 (1929). "Charity begins where certainty in beneficiaries ends, for it is the uncertainty of the objects and not the mode of relieving them which forms the essential element of charity." S.E. Thomason, 2 T.C. 441, 443 (1943). Petitioner urges that the contributions are deductible as ordinary and necessary expenses in light of his position in the community. We have already pointed out that while petitioner's work may have been highly commendable, the expenses were neither ordinary nor necessary to petitioner's work as a schoolteacher, and therefore they are not deductible. The third category of expenses which petitioner argues are deductible is funds expended in the summer of 1963 allegedly connected with work on his doctoral thesis. He argues once more that they too *172 are deductible because of their ordinary and necessary character in the light of his work in the community and his experimental classroom activities. There is no claim, or evidence to support one, that his 1963 employer, the Los Angeles City Board of Education suggested, demanded or even encouraged petitioner's trip to Boston in the summer to do further work on his doctorate. This was his personal decision to advance his own career and educational goals. Petitioner's trade or business at the time was employment as a schoolteacher in an elementary school. The major area of his doctoral studies or research was public school administration. At the end of the summer he returned to his employment as a teacher of elementary grades at the Seventy-Ninth Street School. If the primary purpose of the expense was other than maintenance or improvement of his skills as a teacher, then he is not entitled to the deduction. Petitioner has shown no connection whatever between his 1963 studies at Boston and his 1963 employment. Petitioner has the burden to show that his primary purpose was not to obtain a new position or advancement in his profession. The record does not enlighten us at all as to that. *173 Petitioner has failed in his burden, and therefore the deduction for the educational expenses must be denied even if petitioner had proved that the expenditures were made. Joseph T. Booth III, 35 T.C. 1144 (1961). Petitioner has failed to show that the claimed educational expenses were incurred to maintain his employment, to preserve it or to carry on with it. The fourth and final category is the personal expenses such as medical expenses, toothpaste, mouthwash, deodorants, shoes, and others. The Commissioner allowed over $500 of the claimed items, which did include deductible contributions, medical expenses and interest sprinkled throughout the schedules. However, because they came to less than the standard deduction provided by section 141, he substituted the standard deduction in lieu of the lesser sum which he had previously allowed. The expenses which he disallowed are still being claimed by petitioner. Respondent urges their nondeductibility under section 262, which dictates that unless otherwise provided there shall be no deduction for personal or living expenses. Petitioner argues, as he has as to other expenses, that the personal 644 expenses should be *174 deductible because they were ordinary and necessary to his classroom activities and position in the community. He attempts to circumvent section 262 by urging their deductibility under section 162 by virtue of their character as ordinary and necessary. Personal expenses are not deductible no matter how ordinary and necessary they may be to the personal life of the taxpayer. This argument is therefore without benefit to petitioner since we cannot find that the expenses in this category were either ordinary or necessary business expenses of his employment as a teacher. We have already indicated that we applaud the efforts made by petitioner to bring an enriched experience to his own pupils and to the other children in his school. We believe that he acted with compassion and generosity. We are mindful that other teachers throughout the years have sacrificed not only of themselves but of their often meager earnings for the benefit of their students. However, the Federal fisc must be protected and only those deductions which are provided for by Congress can be allowed for income tax purposes. Not only has petitioner failed to establish his right to the claimed deductions under existing *175 statutory provisions but he has also failed to carry his burden of proving that the alleged expenditures were in fact made for the purposes claimed. He testified at trial in an extremely vague, confused and general way. For example, in explaining his itemized deduction schedule, he said: As a consequence of not finding this general category of ordinary and necessary business expenses involved in professional teaching, I didn't itemize on my return the categories and items in my schedule, such as medical, dental, contributions. The fact that these were unusual, ordinary and necessary business expenses I found it necessary to generalize since it seemed particular to my situation. Almost immediately following this, when petitioner indicated he was concluding his testimony, the Court invited further evidence with the comment that petitioner had not yet proved a deductible item; petitioner was asked to prove payment of the claimed expenses. He was advised by the Court that he would have to show that he was entitled to deduct more than the respondent had allowed. Petitioner then testified as follows: Your Honor, I would like to submit that these itemized deductions of which the respondent *176 has indicated there are 250 be categorized within ordinary and necessary business expenses without itemizing them individually, one through 250. This is the only evidence of record to establish payment of almost 250 itemized deductions claimed and disallowed. Not one bill, receipt, cancelled check or other document was presented nor was any satisfactory explanation given for the petitioner's failure to do so. We cannot accept such vague, general and confused self-serving testimony, standing alone, as sufficient to sustain the petitioner's burden of proving payment of the several hundred items here involved. There is just no evidence before us to permit a greater allowance of deductions than respondent's determination recognizes. The respondent's determination, which is accorded the presumption of correctness, was apparently in all respects a proper and correct one. It must be sustained. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩